ORIGINAL

FILED
U.S. DISTRICT COURT
2009 JUL 24 AM 8:40
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MICHAEL TYRONE ADAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 309-001 |
| | ) | (Formerly CR 305-024) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government submitted its response to the motion. On July 9, 2009, the Court held an evidentiary hearing, at which time Petitioner, his fiancée, Janet Kirkland, and his former counsel, Mitchell M. Shook, offered testimony. For the reasons discussed more fully below, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED**, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Petitioner.

### I. BACKGROUND

**A. Procedural History**

On December 8, 2005, Petitioner and several other co-defendants were indicted on one count of conspiracy to distribute fifty (50) grams or more of cocaine base and cocaine

hydrochloride, in violation 21 U.S.C. §§ 841 & 846 and 18 U.S.C. § 2. See United States v. Adams, CR 305-024, doc. no. 1 (S.D. Ga. Dec. 8, 2005) (hereinafter "CR 305-024"). On October 13, 2006, a superceding indictment was filed to include another defendant, but the charges against Petitioner remained the same. See id., doc. no. 58. Pursuant to a negotiated plea agreement, Petitioner pled guilty on November 28, 2007 to one count of conspiracy to distribute a quantity of cocaine base and cocaine hydrochloride, a lesser included offense. Id., doc. nos. 138 & 153. On October 24, 2008, the Honorable William T. Moore, Jr., Chief United States District Judge, sentenced Petitioner to 215 months of imprisonment and 5 years of supervised release. Id., doc. nos. 154 & 155. Petitioner did not appeal.

Petitioner timely filed the instant § 2255 motion contending that his former counsel, Mr. Shook, was ineffective for failing to honor his request immediately following sentencing to file a notice of appeal. (Doc. no. 1, p. 5). In its response, the government denies that Petitioner requested that Mr. Shook file an appeal immediately following sentencing but does concede that Petitioner contacted Mr. Shook's office in early December 2008 inquiring as to the status of his appeal. (Doc. no. 3, pp. 2-3). The evidentiary hearing was held to resolve several factual issues: (1) whether Petitioner requested that a notice of appeal be filed, (2) when the request was made, and (3) if necessary, whether Petitioner can show excusable neglect or good cause that would have allowed an extension of the standard 10-day period for filing a notice of appeal. See Fed. R. App. P. 4(b)(1)(A) & 4(b)(4). Petitioner was represented at the hearing by appointed counsel, O. Hale Almand, Jr.

## B. Factual Background

### 1. Testimony of Mr. Shook

At the evidentiary hearing, Mr. Shook testified that he was retained to represent Petitioner in March 2005. Following the decision by the United States Attorney's Office to "adopt" the case from state court, Mr. Shook engaged in prolonged plea negotiations over six to eight months to attempt to get the government to reduce the conspiracy charge from 50 grams of drugs to "a quantity" of drugs, a lesser included offense. As alluded to above, Mr. Shook was successful in negotiating such a plea agreement. Mr. Shook averred that in exchange of Petitioner's guilty plea, the government agreed to an acceptance of responsibility credit and to move for a sentence reduction if Petitioner cooperated in providing information regarding other investigations following sentencing. Mr. Shook testified that under the superceding indictment, Petitioner originally faced a life sentence if he went to trial and was convicted. However, under the plea agreement, Petitioner only faced a statutory maximum of 20 years of imprisonment.

According to Mr. Shook, he discussed the plea agreement with Petitioner "numerous times" and discussed the nature of the overwhelming evidence against Petitioner, including the fact that all of the remaining co-defendants would be called to testify against him, if the case proceeded to trial. Mr. Shook stated that Petitioner had expressed concern during these discussions that drugs that were not his would be attributed to him under the plea agreement. However, Mr. Shook explained to Petitioner that his definition of possession and the legal standard were different, and that Petitioner could be considered in possession because he bought the drugs and assisted in transporting them to the location where they were recovered.

3

However, Mr. Shook expressed that he was confident that Petitioner understood the nature and contents of the plea agreement at the time he signed it and entered his guilty plea.

Following the entry of Petitioner's guilty plea, the United States Probation Office prepared a Pre-Sentence Investigation Report ("PSI"), which Mr. Shook testified he discussed with Petitioner extensively. Mr. Shook stated that the PSI recommended that Petitioner not receive an acceptance of responsibility credit because, though he had acknowledged in his pre-sentence interview that the drugs recovered from his truck belonged to him, he had also denied ownership of any of the drugs or guns found in the mobile home. See PSI, ¶¶ 30-32. The PSI also recommended that Petitioner receive a two-point enhancement of his offense level because Petitioner was in possession of two firearms at the time he committed the crime. Id., ¶ 35. Mr. Shook testified that following extensive discussions with Petitioner, Petitioner decided not to object to the enhancement but did wish to object to the recommendation that he not receive an acceptance of responsibility credit.

Mr. Shook went on to state that he proceeded to file an objection to the PSI, which argued that Petitioner should not be denied an acceptance of responsibility credit simply because of the difference between Petitioner's understanding of ownership and possession and the legal standards. See PSI Addendum, p. 1. Mr. Shook argued in his objection that Petitioner's conversations with law enforcement indicated that he participated in the conspiracy and that his failure to understand the legal standards of ownership and possession should not be held against him. Id. At sentencing on October 24, 2008, Judge Moore accepted Mr. Shook's argument and agreed that Petitioner should still receive an acceptance of responsibility credit.

4

Mr. Shook went on to testify that Judge Moore advised Petitioner of his rights with respect to an appeal at sentencing on October 24th and that following sentencing, he and Petitioner did not discuss Petitioner's right to file an appeal or the advantages and disadvantages of doing so. However, he did state that he told Petitioner after sentencing to call his office if he needed to get in touch with him. Mr. Shook emphasized that he had discussed the nature of an appeal with Petitioner prior to sentencing and felt no need to "re-hash" those conversations once the sentence had been pronounced. Mr. Shook specifically denied that Petitioner, or anyone on his behalf, instructed him to file an appeal at the time of sentencing or at anytime thereafter.[1] To that end, Mr. Shook stated that there had been no problems with Petitioner getting in touch with him during the entire course of his representation and that he was confident that Petitioner could contact him if he wanted to file an appeal. However, Mr. Shook acknowledged that he did not make any efforts himself to contact Petitioner to see if he wished to file an appeal.

Mr. Shook testified further that on November 3, 2008, 10 days following sentencing, Petitioner called his office and told his paralegal that he wanted to get a copy of his file for

---

[1] Mr. Shook did note that if Petitioner had instructed him to file an appeal that he believed to be frivolous, he would have filed a notice of appeal simultaneously with an Anders brief and a motion to withdraw as counsel. See Anders v. California, 386 U.S. 738, 744 (1967) (holding that defense counsel may withdraw his representation after trial if counsel he believes the case to be "wholly frivolous" and files a brief demonstrating that he has conducted a "conscientious examination" of the record and "referring to anything in the record that might arguably support the appeal"); see also United States v. Edwards, 822 F.2d 1012, 1013 (11th Cir. 1987) (*per curiam*) (requiring counsel to "isolate" the pages in the record that are relevant to arguably meritorious issues and cite any relevant legal authority).

5

his fiancée, Janet Kirkland, to pick up.[2] Mr. Shook's paralegal told Petitioner that he needed to send a letter authorizing the release of his file. Mr. Shook averred that this was the only contact his office had with Petitioner following his sentencing until December 3, 2008. Mr. Shook reported that on December 3rd, Petitioner called his office and spoke with Mr. Shook's paralegal, inquiring as to the status of his appeal. Mr. Shook was adamant that his paralegal would have told him if Petitioner or anyone on his behalf had called inquiring about an appeal at any time before then. Prior to December 3rd, however, Mr. Shook's office did have contact with Ms. Kirkland, who called the office four times between November 7, 2008, and November 14, 2008, to see if she could pick up the copy of Petitioner's file. Ms. Kirkland was informed that Petitioner's file could not be released to her until the office had received Petitioner's authorization to do so. On November 19, 2008, Ms. Kirkland arrived at Mr. Shook's office with the requisite authorization from Petitioner, and on November 25, 2008, she picked up a copy of Petitioner's file. At the hearing, Mr. Shook testified that this behavior was consistent with that of a client seeking new counsel.

Going back to December 3, 2008, the date Mr. Shook stated that his office was first contacted by Petitioner following sentencing, Mr. Shook testified that his paralegal was the one who spoke to Petitioner on that day because he was in court and did not return to the office until late. According to Mr. Shook, as soon as his paralegal relayed Petitioner's inquiry about his appeal, he instructed her to call the jail where Petitioner was being held and leave a message to tell Petitioner to call him at a specific time the next day when Mr. Shook knew

---

[2]As noted by Mr. Shook at the hearing, his knowledge of the phone calls made by Petitioner and Ms. Kirkland is based on records generated by a computer program maintained by his office that logs the date, time, and substance of telephone conversations.

6

he was going to be in the office. On December 4, 2008, over a month after sentencing and well after the standard 10-day deadline for filing an appeal had expired, Petitioner called and spoke directly to Mr. Shook, again inquiring about the status of the appeal. Mr. Shook testified that he was caught "off guard" by Petitioner's inquiry because it was the first time he had personally spoken with Petitioner following his sentencing on October 24, 2008. Mr. Shook went on to state that he told Petitioner when he called on December 4th that "there was no appeal" because Petitioner had not requested that an appeal be filed. He also testified that he informed Petitioner that the only issues he could appeal would be the voluntariness of his plea or his sentence. Because of the extensive inquiry conducted by Judge Moore at the guilty plea hearing, Mr. Shook stated that he informed Petitioner that this issue would be frivolous. Mr. Shook also testified that he informed Petitioner that any appeal of his sentence would also be frivolous because he could only appeal issues raised in the objections to the PSI and Judge Moore had agreed with the only objection filed. He maintained that his conversation ended with Petitioner understanding these issues, and Petitioner did not instruct him to file an appeal at any time during the course of the conversation.

At the hearing, Mr. Shook went on to state that after he spoke with Petitioner, he did perform some research as to whether Petitioner could file a motion for an out-of-time appeal. He testified that based on his understanding of the relevant rules and case law, he did not believe that such a motion would be applicable because Petitioner had not requested him to file an appeal within the standard 10-day period. See Fed. R. App. P. 4(b)(1)(A) & (b)(4). Mr. Shook testified that he did not contact Petitioner to tell him that he did not believe he could move for an out-of-time appeal, and according to Mr. Shook, he had no further contact

with Petitioner after their conversation on December 4, 2008.

2.      **Testimony of Petitioner and Ms. Kirkland**

At the hearing, Petitioner testified that he did not agree with the contents of the plea agreement, particularly as to the drug quantity, but signed it anyway because Mr. Shook had informed him that all the drugs would be attributed to him if he went to trial. He further stated that he did instruct Mr. Shook to file an appeal on October 24, 2008, the day of sentencing, to which Mr. Shook responded that "he would get back in touch with him." Petitioner further testified that based on what Judge Moore had told him at sentencing regarding his right to appeal, he believed that he was only required to orally state to Mr. Shook that he wanted to file an appeal. Petitioner also stated that he asked Ms. Kirkland to contact Mr. Shook to tell him that he wanted to file an appeal.

Petitioner went on to testify that he called Mr. Shook's office multiple times before December 3, 2008, and was only able to speak to his paralegal. Consistent with Mr. Shook's testimony, Petitioner stated that the first time he and Mr. Shook spoke following sentencing was on December 4, 2008, again over a month after sentencing and well outside the standard 10-day period for filing an appeal. Petitioner also maintained that during the course of the December 4th telephone conversation, Mr. Shook did not inform him that the standard period within which to file an appeal had expired, nor did he tell Petitioner he could file a motion for an out-of-time appeal for good cause or excusable neglect. According to Petitioner, Mr. Shook simply told him there was nothing they could do. With respect to Ms. Kirkland's efforts to obtain a copy of his file, Petitioner stated that he did contact another attorney, Mr. Paul Threlkheld, to see if there was anything else that could be done in his case. However,

Petitioner also stated that he never instructed Mr. Threlkheld to file an appeal and that Mr. Threlkheld did not give him any advice other than to file the instant § 2255 motion. Finally, Petitioner testified that if he were allowed to appeal, he would seek a sentence reduction based on the fact that lesser amounts of drugs were attributed to his co-defendants, even though they all participated equally in the conspiracy. Petitioner also testified that he would like to challenge the sentence enhancement based on possession of firearms during the commission of the crime because the guns were not his.

Ms. Kirkland testified that she contacted Mr. Shook's office "a few days" after Petitioner was sentenced to convey Petitioner's desire to file an appeal. She stated that she did not wait long to contact the office because she knew there was a "time limit" for filing an appeal. She went on to state that she spoke to Mr. Shook's paralegal and conveyed Petitioner's request to file an appeal. Ms. Kirkland maintained that she was told that Mr. Shook was finished with Petitioner's case, as far as the paralegal knew. According to Ms. Kirkland, Mr. Shook never got back in touch with her, nor did anyone else from his office. With this testimony in mind, the Court turns to the merits of Petitioner's § 2255 motion.

## II. DISCUSSION

### A. Petitioner's Instruction to File Appeal

To establish ineffective assistance of counsel, Petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Nonetheless, the Court's scrutiny of counsel's performance must be "highly deferential," and the Court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged

9

conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. In this regard, the Court must determine whether counsel's performance was inside "the wide range of professionally competent assistance," so as "to make the adversarial testing process work in the particular case." Id. at 690.

When reviewing counsel's performance, there is a strong presumption that it falls within the "wide range of reasonable professional assistance," and thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound . . . strategy.'" Id. at 689. Furthermore, strategic decisions are entitled to a "heavy measure of deference." Id. at 691. As the Eleventh Circuit has succinctly stated, "The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

Under the second prong of Strickland, Petitioner is required to establish prejudice from any deficient performance. Strickland, 466 U.S. at 687. However, the Court is mindful that in the Eleventh Circuit, "an attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal."[3] Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 477

---

[3] Indeed, "'an attorney's total failure to file an appeal after being instructed to do so will *always* entitle the defendant to an out-of-time appeal, *regardless of the defendant's chances of success.*'" Gray v. United States, 834 F.2d 967, 967 (11th Cir. 1987) (*per curiam*) (quoting Ferguson v. United States, 699 F.2d 1071, 1072 (11th Cir. 1983)) (emphasis added).

10

(2000) (explaining that lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a professionally unreasonable manner). Thus, it is not necessary that Petitioner demonstrate any additional prejudice aside from the lost opportunity to appeal.

Accordingly, if the Court determines that Mr. Shook failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

Here, Mr. Shook testified that neither Petitioner nor anyone acting on his behalf instructed him to file a notice of appeal immediately following sentencing or at anytime thereafter. He was adamant that the first time Petitioner personally spoke with him regarding an appeal was the telephone call on December 4, 2008, well after sentencing on October 24, 2008, and well outside the standard 10-day period for filing an appeal. On the other hand, Petitioner stated that he told Mr. Shook he wanted to file an appeal immediately following sentencing and that he told Ms. Kirkland to contact his attorney to convey his desire to file an appeal. Ms. Kirkland also testified that she called Mr. Shook's office "a few days" after Petitioner was sentenced to tell Mr. Shook that Petitioner wanted to file an appeal.

Thus, the threshold issue relates to credibility. Particularly, the Court must weigh the testimony of Mr. Shook against the self-serving allegations of Petitioner, as well as those of Ms. Kirkland. Generally, when the testimony conflicts, the Court, as fact finder and "ultimate judge of the credibility and demeanor of witnesses," must believe one witness over the other. McCoy v. Newsome, 953 F.2d 1252, 1262 (11th Cir. 1992) (*per curiam*). More specifically, the determination of the credibility of a testifying attorney during an evidentiary hearing on a claim of ineffective assistance of counsel is a matter within the Court's discretion. See Carr

v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004).

Here, the Court specifically credits the testimony of Mr. Shook over that of Petitioner and Ms. Kirkland, to the extent Mr. Shook testified that he was not instructed to file an appeal either before or after the standard 10-day period for doing so had expired. Mr. Shook, who has practiced as a criminal defense attorney for nearly seventeen years, is well-known to the Court and, as he testified, he has been appointed or retained in approximately twenty-five to thirty federal cases and has taken several cases to trial in both state and federal court. In sum, Mr. Shook has demonstrated himself to be an ethical and zealous advocate for his clients, and the Court finds that Mr. Shook was not instructed to file an appeal on behalf of Petitioner. Any notion that Mr. Shook would ignore a specific request that he file a notice of appeal on Petitioner's behalf and then lie to the Court about this circumstance is incredible.

**B.     Inadequate Consultation with Petitioner**

Even though the Court finds that neither Petitioner nor Ms. Kirkland instructed Mr. Shook to file an appeal on behalf of Petitioner, the Court's inquiry does not end there. Indeed, the Eleventh Circuit recently held that even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007) (quoting Flores-Ortega, 528 U.S. at 478). Thus, Petitioner's § 2255 motion should still be granted if the Court finds that Mr. Shook failed to adequately consult with Petitioner.

"[A]dequate consultation requires informing a client about his right to an appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making

a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." Id. (citing Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005)). The record demonstrates that Mr. Shook did not adequately consult with Petitioner as to the first two requirements of Thompson, because he did not inform Petitioner about his right to appeal following sentencing, nor did he advise him at that time of the advantages and disadvantages of filing an appeal. Indeed, Mr. Shook acknowledged during his testimony that he did not address these two issues with Petitioner following sentencing because Judge Moore had done so. Though Mr. Shook testified that he discussed the right to appeal and its attendant consequences prior to sentencing and did not feel the need to "re-hash" these conversations after sentencing, these efforts do not satisfy the standard required by the Eleventh Circuit. Indeed, there is nothing for an attorney and his client to discuss with respect to an appeal until after the sentence is pronounced.

Moreover, Mr. Shook did not make a reasonable effort to determine if Petitioner wanted to file an appeal following sentencing, as the third requirement of Thompson dictates. Mr. Shook stated several times that he did not have any contact with Petitioner following sentencing until December 4, 2008, when Petitioner called him to inquire as to the status of his appeal. Moreover, Mr. Shook testified that he made no effort to contact Petitioner after sentencing to inquire as to whether he wanted to file an appeal. While the Court does not impugn the integrity of Mr. Shook or his efforts in securing Petitioner a more favorable sentence than he originally faced,[4] the Eleventh Circuit requires that counsel adequately

---

[4]As noted above, Petitioner originally faced a life sentence if he went to trial and was convicted. However, under the plea agreement, Petitioner only faced a statutory maximum of 20 years of imprisonment, and he was ultimately sentenced by Judge Moore to 215 months

13

consult with his client regarding "his right to an appeal, . . . the advantages and disadvantages of taking an appeal, *and* . . . [to make] a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." Id. (citing Frazer, 430 F.3d at 711). As discussed in detail above, Mr. Shook's own testimony demonstrates that he did not adequately consult with Petitioner as required by the Eleventh Circuit.

Once a court determines that counsel did not adequately consult with his client, it must first determine whether counsel had an affirmative duty to consult, and if so, whether any prejudice inured to the client as a result of counsel's failure to do so. Id. at 1207 (citing Flores-Ortega, 528 U.S. at 480). In general, counsel has a duty to consult with his client when either "(1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005) (citing Flores-Ortega, 528 U.S. at 480). "In making this determination, courts must take into account all information counsel knew or should have known." Flores-Ortega, 528 U.S. at 480. Petitioner testified that he wanted to appeal because he received a higher sentence than his co-defendants, even though they all participated equally in the conspiracy, which the Court finds to be a rational reaction under the circumstances. Thus, Mr. Shook had an affirmative duty to consult with Petitioner given the Court's finding that a rational defendant in Petitioner's circumstances would have wanted to appeal.

Having made this determination, the Court turns its attention to whether counsel's failure to consult resulted in prejudice to Petitioner. Flores-Ortega, 528 U.S. at 481. In order to establish prejudice where counsel has failed to filed an appeal, Petitioner must show that

---

of imprisonment, slightly less than 20 years.

14

"there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484. "Because a direct appeal of a federal conviction is a matter of right . . . [a court] determine[s] whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal." Thompson, 504 F.3d at 1207-08 (citations omitted).

Petitioner testified that he was unhappy with his sentence for reasons already discussed and that he wants to pursue an appeal to challenge the drug quantity and his sentence enhancement. The record demonstrates that Petitioner's appeal would have been timely had Mr. Shook adequately consulted with Petitioner following his sentencing, and the Court need not consider whether the grounds Petitioner wishes to raise on appeal would be successful, as Petitioner is entitled to appeal his conviction or sentence as a matter of right, regardless of the merits of the appeal. See id. Thus, Petitioner's § 2255 motion should be granted to pursue an out-of-time appeal.[5]

When a court determines that an out-of-time appeal in a criminal case is the proper remedy in a § 2255 proceeding, the Eleventh Circuit directs that the court proceed as follows:

> (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by Rule 4(b)(1)(A)(i).

---

[5] Because the Court determines that Petitioner is entitled to an out-of-time appeal based on Mr. Shook's failure to adequately consult with Petitioner, the Court does not reach the excusable neglect or good cause inquiry.

15

United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000). Accordingly, the Court recommends that the procedure set forth in Phillips be followed in this case to re-institute Petitioner's right to appeal. Unless Petitioner elects to retain his own counsel for the appeal,[6] the Court recommends that the presiding District Judge appoint counsel prior to the reimposition of his sentence. After the reimposition of Petitioner's sentence, Petitioner, through counsel, will be allowed ten days in which to file a formal notice of appeal.

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that the § 2255 motion be **GRANTED**, that the judgment in Petitioner's underlying criminal case be **VACATED**, that an identical sentence be **RE-IMPOSED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Petitioner.

SO REPORTED AND RECOMMENDED this 24th day of July, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[6]If Petitioner does choose to retain his own counsel for the appeal, he is **DIRECTED** to file a notice with the Court indicating his intention to retain counsel within the time period allowed for filing objections to this Report and Recommendation. Otherwise, the Court will appoint counsel to represent Petitioner.

16